Good morning, Your Honors. May it please the Court, David Kesselman for the Plaintiff and Appellant. Your Honors, the issue before the Court this morning is straightforward. Did the District Court have personal jurisdiction over the defendant, Beijing B. Knight? In our view, the answer is unequivocally yes. The District Court erred in granting the defendant's motion to dismiss. First and most fundamentally with respect to the specific jurisdiction analysis, the District Court erred by applying the wrong legal standard to Plaintiff's intentional tort claim. Plaintiff, a California corporation with its principal place of business in California, properly alleged in the operative's Second Amendment complaint that defendant committed an intentional tort, fraud in the inducement, which injured Plaintiff in California. Under this Court's controlling authorities, the District Court was required to apply the Calder v. Jones effects test to the intentional tort claim. Well, brochetto is pretty darn close. And an effect says that when the tort claim is the flip side of the contract claim, which it precisely is here, that is, they falsely promised that we would be partners in the joint venture, and the breach of contract is we weren't partners in the joint venture, that the claim is essentially a contract claim and, therefore, is governed by the purposeful availment test. Well, Your Honor, I appreciate that. I think brochetto, however, is distinguishable on a couple of grounds. First, with your own concurrence in brochetto, we note that you did apply purposeful direction in the effects test, but the facts in brochetto are very different, and it's at least understandable why the Court may have applied purposeful availment there, because you had someone putting a car up on eBay, as I recall, and in that case, it was absolutely fortuitous that the winning claim had happened to be in California. There was no express aiming. There was no purposeful direction towards California. It could have just as easily been Michigan or Florida. This is a very different situation, in our view, where the defendant clearly knew and understood for years that it was dealing with and directing conduct towards California, towards the plaintiff appellant in this case. So properly viewed, we believe brochetto is different in terms of its facts, and also, frankly, we believe your concurrence, where you evaluated purposeful direction, was probably the proper standard. And if you look at the Court's jurisprudence over the last 20 years, in almost every case where there has been an intentional tort presented, the Court has applied the Calder effects test. There have been a couple of deviations, but in the last 20 years or so, it really has been that Calder has applied. And in this case, the appellee has made no effort to attack the validity of the fraud and the inducement claim in this case. So as I read them, most of the purposeful direction cases involve one of two situations. Either they involve defamation cases, as in the Calder and Keaton cases, or they involve products liability cases, where we have questions about entering the stream of commerce and directing commerce towards a particular state. What connections do you have with California that would have changed if your client had lived in Arizona? I mean, what was unique to California? There's no mention of California law in any of the documents. They talk about American law, but not California law. There are some incidental meetings in California, but it doesn't seem to have any bearing on California, except that Los Angeles turned out to be a convenient place where both parties were at a particular time and place. Well, I do think, Your Honor, there were a couple of instances. For example, in the ‑‑ not the original letter of intent, but in the later proprietary information agreement where California was mentioned as the plaintiff's primary place of business. Well, that's just an acknowledgment as to where they are, but ‑‑ Well, I have two comments. One, if you view the evidentiary submission by my client in which he stated that the manner in which the joint venture was supposed to operate was not isolated to China, that at all times the defendant knew and understood, defendant and Delphi, that my client, based in California, was going to be involved in the marketing in the United States, the understanding read properly in our favor on prima facie showing is that the joint venture was going to continue to operate in China and out of California. This was going to be a worldwide venture. Delphi would be involved as well. Both of the agreements talk about China. They do. The base of the operation was going to be in China for purposes of the manufacturing. But with respect to the marketing, there was going to be ‑‑ It doesn't say that in the agreement. I mean, that may be what your client thought, but it isn't what ended up on a piece of paper. And the piece of paper, if I'm not mistaken, in the case of the letter of intent, was signed in China, in Chinese. It was, Your Honor, but we never got to the stage where we actually had a final agreement in place, and there were discussions and the expectations of the parties, as my client has alleged at this stage of the proceedings, is that he was going to continue. He was not moving to China. His operation was going to remain in California and was going to be part and parcel of the worldwide marketing efforts out of California. But there isn't anything unique about California other than the happenstance that your client lived there. Well, it's more than that, Your Honor, and I think, respectfully, there have been other cases. For example ‑‑ Just tell me about your case. I'd be more interested in hearing about your case than the other ones right now. So if you've got ‑‑ What connects this to California? How was HK China supposed to anticipate that it could be hailed into court in California? Beijing United, Your Honor. I'm sorry. HK China ‑‑ I'm sorry, Beijing United, right. Yes. Well, they understood it because, as I have indicated, my client submitted a declaration indicating that it was understood and expected by the parties that he was going to participate in the joint venture and that his base of operations was out of California. It would be no different, respectfully, if Coca-Cola out of Atlanta entered into a worldwide distribution agreement where there was going to be an understanding that part of the joint venture for that distribution agreement would be operated out of Atlanta. This was going to be the same thing from my client's perspective. I understand what you're saying, and possibly down the line, maybe discovery would show otherwise. Maybe the other parties had a different expectation. But on this record, on the parameter face you're showing, it's our view that the district court, without an evidentiary hearing, had to credit my client's view of the facts, and it was my client's understanding and belief that he was part and parcel and that he was operating out of California. He was not moving to China. But you wouldn't have to change any facts here and just put your principal place of business in Phoenix, have all your meetings in California as you did, and then your client would have been damaged wherever your client wandered. Well, but I think that's true, Your Honor. That would give you specific jurisdiction wherever your client decided to go, even though there was no connection whatsoever to the forum state. Well, I guess I'd have to respectfully disagree. There was no connection to the forum state because they committed, in our view, a fraudulent inducement directed towards California, knowing, and so it was especially aimed knowing that my client was here. And that, as we understand it, is what the case law in this circuit requires. If you look at CE distribution, which is not a product liability case, but it's actually a tortious interference case, it's very similar in the sense that you have a tort committed and aimed at Arizona in that case. Maybe the most analogous situation, in our view, is the Dole Food case, Dole Food versus Watts, where you had Dole based in California, and as I recall, they were actually a Hawaii corporation. You have two European defendants dealing with Dole subsidiaries in Europe, and nevertheless, this circuit found jurisdiction in California because the fraud and the inducement was ultimately directed towards the decision makers in California. And that, in our view, is quite analogous here where the appellant, H.K. China's decision makers and base of operations were in California. So in our view, we believe that the district court erred in not applying Calder in this case. We believe that CE distribution controls here because there you had a decision where there was a tort and a contract. Yeah, but it didn't involve the same parties. I mean, there's a significant difference between them. CE distribution, the tortious interference claim, was with respect to a third party, whereas the contract claim was with respect to the defendant. So it's quite different. Well, Your Honor, I know it had to do with a distribution agreement, but I actually thought the parties were the same. You had a contract and distribution issue with respect to the same parties. Let me move on to just two more points and then I want to reserve a little bit of time for rebuttal. Even if the purposeful availment test were to apply here, we believe that there was still jurisdiction. We believe that the district court did not properly analyze the analysis and we believe this case is quite close to the Roth versus Garcia Marquez case where in Roth, as in here, the defendants were overseas and there it was in Spain and Mexico. There were a couple of visits to California. Yeah, but in Roth, the film was going to be produced in California. Well, Your Honor, we would analogize it to be... But here the agreement, the only thing you can point to in writing, says China. Well, but Your Honor, the way the joint venture was going to be structured is that my client was going to participate. I mean, under that view, it means that my client was participating in the joint venture where it would have no involvement even though it was based in California and we believe that there was going to be an ongoing relationship that was going to include and have substantial connection and ongoing relationship to California. Most of the purposeful availment cases that were cited by the district court or that were cited by appellee involved one-off situations. A single contract, a single purchase of a product. Here we believe we had an ongoing relationship that the defendant appellee knew was going to require ongoing connection to California. With that, Your Honors, I'm going to reserve just a few moments, if that's all right, so I have some time for rebuttal. Certainly is. Mr. Dorman. Thank you, Your Honors. Rod Dorman, on behalf of the defendant appellee, the Beijing United Automobile and Motorcycle Manufacturing Corporation, there was never, in this case, any purposeful availment of the privilege of doing business in California. This is a circumstance where the appellant is in the business of going to China, structuring deals in China. He speaks Chinese. He went and his people went for 33 in the aggregate days to speak with our client, that is the state-owned Chinese automobile company in China, talking about a manufacturing joint venture where seat belts would be manufactured in China, not here. As the court says, this isn't the Roth case. The Roth case contemplated that the movies would, in fact, be made in California. Had this joint venture contemplated the manufacture of seat belts in California, we'd have a very different outcome. It would be a very different case. And there's no question that under American jurisdiction principles that the Chinese courts have jurisdiction here. The question is whether California courts also have jurisdiction. It's not a matter of... And then there are other questions of forum non and venue and things like that. That's not our formula. Our formula is, does California also have jurisdiction? That's correct, Your Honor. But we have... There's no argument here that general jurisdiction applies. The only argument that I understand really is being made here is that there is specific jurisdiction. And the reply brief, as I read most recently the reply brief from the appellant, their argument focused repeatedly on seat distribution. Made the argument there that there was an obligation by the court, Judge Wilson below, to have taken the tort claim and separately analyze that under a purposeful direction called her effects test. Which he didn't do. I share Judge Reimer's observation about the factual difference between CE distribution and our case. Because in that case, you had two separate contracts and three parties were involved. CE distribution was the exclusive seller of Jensen speakers for an Italian company named Sika. And that was a contract that was interfered with by this new sensors company. And there was a separate different contract. There was a distribution contract between CE distribution and sensor. And there, and this was not either a products liability case or a libel case, by the way. This was an intentional interference with contractual relations case. That this court in CE distribution said, we have to look at that case under the purposeful direction test because that was that tort. What counsel misses, and the interesting, I think the only provocative legal issue in this case, is to what extent does the holding of the procedure that was used by the court in CE distribution, which is where you separate and you separately analyze contract claims from tort claims under the different purposeful or purposeful direction tests, did that have to be done here? That's really what this comes down to. And the reason why it didn't have to be is this. When you go back and you reread Schwarzenegger decision, interestingly, the first prong of the purposeful direction test is not an intentional tort. That's not the first prong, and that's what counsel has been talking about. The first prong is an intentional act. And what the Schwarzenegger decision makes clear is that intentional act for the first prong has a specialized meaning in the context of the Calder effects test. And we have generally applied the intentional act test to actions sounding in tort. So intentional acts relating to contractual promises or relating to representations concerning facts that are the subject of a contract are not intentional acts for the purpose of the first prong of the Calder effects test. This is how you harmonize your Gray and company decision with the CE distribution decision because in the Gray company decision, you recall the facts of that case were a company purchases a used food processing filter machine, gets it, finds out it doesn't work. And what does it do? It files an action. I believe that was in Oregon where it claimed breach of contract, rescission, breach of warranty, and misrepresentation. Torts. Misrepresentation's a tort. But what did this court do? This court applied the purposeful availment test because those torts sounded in contract. Those actions sounded in contract. So what we're left here with is that the principle thrust of appellant's appeal is that the lower court applied the wrong standard, which is the wrong test, is just not correct. The tort, the intentional act they rely on to require an effects test analysis is a false promise tort. It's fraud in the inducement of the contract. It's the identical. I never intended to perform the promises I made in the contract. That's their tort. That act is not an intentional act of the type that gets treatment under the purposeful direction test or the call to effects test. I think that's appeal is that simple. If the court has no further questions, I have nothing more. I don't think so. Thank you. Mr. Durham, Mr. Kesselman. Thank you, Your Honor. Just briefly, let me just respond to a couple of points the counsel just raised. I believe, if I understood what he's saying, in effect, if you allege fraud in the inducement in a breach of contract action, then fraud in the inducement will not be treated separately. Respectfully, that's not what this circuit's decisions over the last 20 years have held. Schwarzenegger, Yahoo, Purcell. These cases have all stated that you analyze the claims separately. And California law is quite clear that fraud in the inducement is a separate and distinct intentional tort claim which arises from different conduct. It's the period of time leading up to entering into an agreement. It's not the actual breach of the agreement. So, respectfully, I disagree with Mr. Dorman on that. This court, actually, in two decisions, in dull food and in data disk, have both applied purposeful direction to fraud in the inducement claim. So, it's not that this is brand new ground that we're covering. And with respect to the Gray case, as we pointed out in our briefs, the court never actually addressed whether it was dealing with negligent or intentional misrepresentation. At the end of the decision noted, it wasn't dealing with a tort at all. So, I think that case is quite distinguishable. One last point I just want to mention in terms of where we were procedurally in this case. Because the district court did not hold an evidentiary hearing, we submitted a declaration from our client indicating that he believed, and he's not a lawyer, so it was in our court, but he believed that when he included language that American law and Chinese law would apply, he thought and understood that meant that there was going to be an opportunity for him to file in California. At this stage of the proceedings, we believe that the district court was required to assume that fact to be true, even though it may be disputed by the defendant appellees. Finally, Your Honor, we recognize that on these facts, on the presence of the record, general jurisdiction may not exist, but we believe we should have been entitled to some forum discovery, limited to determine the true nature of the defendant appellee's sales into California. And we believe since the district court did not even address our request in its decision, at a minimum, this should be remanded to give us an opportunity for some discovery. Thank you very much. Thank you, counsel. Both of you. The matter just argued will be submitted.
judges: Alarcon, Rymer, Bybee